Santana v. Telemundo Network Group, LLC All right, we'll hear first from Mr. Mann. Good morning, Your Honors, and may it please the Court, Jonathan Mann of SSRGA on behalf of the Appellant Plaintiff, Ms. Santana. With me at counsel table is Trial Counsel, Mara Sarofsky, and Ms. Santana is also present in the Court. I'd like to reserve five minutes for my rebuttal. So as the Court's aware, Ms. Santana sued the defendants for retaliation, sexual discrimination under Title VII and the Florida Civil Rights Act, and on appeal she challenges the District Court's dismissal of her retaliation counts and summary judgment as to her sexual discrimination counts. I want to focus on, first anyway, on the District Court's dismissal of the retaliation counts. As the Court's aware, Federal Civil Procedure 8A2 simply requires a short and plain statement of the claim showing the pleaders entitled to relief and contains sufficient factual matter except it is true to state a claim that's plausible on its face. Here, to state a claim for retaliation, Ms. Santana was required to allege she engaged in protected activity under Title VII, she suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse employment action. Ms. Santana's retaliation claims found that she had failed to sufficiently allege a causal connection between the adverse employment action and the protected activity she had engaged in. The Court's order also mentions certain alleged failures regarding alleging specifics about which defendants or which persons within the defendant organizations knew what information. The timeline is somewhat important here in that Ms. Santana was on She, through her counsel, makes the defendant aware by sending their legal department a letter describing the harassing conduct that she had experienced. Can I ask you a favor, maybe just to sort of fast forward here a little bit? With respect to retaliation, what are the most specific allegations that Soto and or Roldan was the She alleged that they were her superiors, as we know. She alleged that they were openly discussing the investigation in the office. The, the, we would contend that she did not have to allege more specifically. Well, let me, let me ask it to you this way. Sure. Does she allege anything about how, about how Mr. Roldan was involved in, I guess, supervising Mr. Soto and in, with respect to goals that they had to meet or things of that nature? Yes, I believe there are general allegations in the complaint that describe that. Which ones do you rely on? Well, as to establishing a causal connection between what she alleged, we rely upon the fact that she alleged that she had previously been allowed to work from home as a reasonable accommodation prior to her return to work in June of 2019. So you have the complaint, the letter in April of 2019, and then the, the amended complaint in this case contains the allegation that she had always previously been allowed to, given the reasonable accommodation to work from home for health reasons. Right. I guess the question though, that, that Judge Newsom is asking is what have you alleged to show that either or both Soto and or Roldan were responsible for any acts of retaliation? In other words, that it was up to them to do it, that they were her supervisors, that they were the decision makers involved. The complaint, the amended complaint does include the allegation that they were her direct, they were her supervisors. If that's, and that, that may be the best that it alleges. I, I might have to double check, but. The difficulty that I have, that I think I have is that the allegation, the allegations of retaliation, so far as I can tell, are really about sort of Telemundo Ritlard. And I just think, I think, I think you have some obligation to show that these individuals had decision-making authority in action, or at least to allege it. I'll double check on that, but I, I believe we, we actually do. I just, I don't have the citation right now. I mean, you do, you do say they're her superiors, although it's not necessarily the case that a superior would make the decisions involved in these cases. Maybe they would. So. It's, well, that's part of the, I think Your Honor might be hitting on some of the argument that we've made in our initial brief, which is just that we, the amended complaint alleges that after the plaintiff makes the complaint by letter in April of 2019, you then have the, the Telemundo Ritlard aware of her complaint, but you also have Roldan and Soto discussing the ensuing investigation in the office. And so, in terms of the awareness of those two, at least, then, you know, that allegation is there. And so, is there anything in the complaint that alleges or that a reasonable inference could be made that, for example, Mr. Roldan was responsible for, or had some role to play in turning down her ability to work from home, or in refusing to decrease her requirements that she had to meet, or any of the other. As to the adjusting her performance statistics to, which then affected her compensation, I believe the answer to that is yes. And I'll, try and find the exact citation. I know that there's argument about whether this, in terms of causation, is a mere temporal proximity case. I know the district court had mentioned that, but we would submit that it's not a mere temporal proximity case as to the causation. The one reason I already mentioned, which is that Ms. Santana alleged in her amended complaint that she had previously been given the accommodation to work from home for health reasons when she needed to, and then she files the complaint, and then it gets denied. And we know that that's, that happens in between, in about a two and a half month temporal period. And then, second on that point, is that the amended complaint also contained the allegation that Mr. Soto had explicitly told Ms. Santana in September of 2018, that he would retaliate against any employee that lodged a complaint against him. That being, he would, that he had already, that he would increase another employee's sales budget. That he would increase another employee's sales budget, which is not the exact allegation that was done here, but quite similar. On that same note about whether it's merely a temporal proximity case, we also argued that, even assuming for the sake of argument that it was causation alleged solely based on temporal the plaintiff is out of the office or out of the physical office on a medical leave, and that it's, the adverse action comes at a natural decision point where, in terms of the denial of her request to work from home before she comes back, and then after she gets back, the other alleged adverse actions, such as the adjustment of her performance statistics to put her below the, below the, to basically get her written up. I think I see the red light right now, so I'll. All right, and you've saved five minutes for questions. May it please the court, Jack Ryder and Marlene Quintana on behalf of the defendants. Let me start with the retaliation issue, which was where counsel spent his time this afternoon, and I'll highlight the fact that I think it's critical that there were some procedural infirmities that predated the ultimate disposition by the district judge in dismissing the claim. As the court would have seen from our brief, the original complaint was dismissed, and although the district judge provided a roadmap for outlining how to provide and state a claim, it is our position, and the judge ultimately agreed, that the amended complaint was also deficient. We filed a motion to dismiss, and although five months passed, the plaintiff did not respond to that motion to dismiss, and the judge, notwithstanding, considered it, considered the where the judge very carefully identified the deficiencies again, and correctly dismissed the case. You know, I have reviewed this, and it does seem like she alleges that they're her superiors, that they retaliated against her. She says certain things specifically, for example, and whether or not they hold up in the end is a different question, but she says, for example, that Mr. Soto reassigned these clients in retaliation. Mr. Soto reassigned several of Ms. Santana's accounts to other agent executives, and against the client's wishes, that Mr., oh, there's a few others in here that I saw. Things of that general nature, why doesn't that show that they were in a position to retaliate against her? I mean, maybe it's not, you know, maybe it's not the specific hiring and firing and that type of thing, so that's with respect to Mr. Soto, but Mr., you know, it seems like that shows that they were not only her superiors, but her supervisors who had decision-making authority, at least with respect to some things that she's alleging. Your Honor, I would submit that general allegations under case law of the fact that somebody is a superior and that some kind of conduct occurred doesn't demonstrate as an allegation, from a pleading sufficiency standpoint, the necessity of causation, the causal connection, for example, and we've cited to the court these cases such as. What about the allegation, Mr. Soto reassigned these clients in retaliation for Ms. Santana rebuffing his sexual advances. What else should she have said there? I believe, Your Honor, based on cases we've cited such as Green versus Alabama Department of Revenue, Johnson versus Miami-Dade County, the notion that it must be some specificity. The idea, and I think this is how the district. I mean, I guess what else, if you, what else, I mean, I understand that you're saying it didn't happen or whatever, but what else should she have said? What specifically should she have said more? An allegation demonstrating the manner through which Mr. Soto or Mr. Roldan, however it's alleged in the general allegations, was aware of the protected activity in terms of what constituted the causal connection. She says that he was aware of the, it says right here, Mr. Soto reassigned these clients in retaliation for Mr. Santana rebuffing his sexual advances. You can't possibly be to dismiss stage. We're not at motion for summary judgment stage on this allegation, right? So that's, yes, Your Honor. And the way I interpret the case law when examining the issue is there has to be a degree of specificity that outlines, for example, it can't just be a conclusory allegation. And that's our position. What else should she have said? I mean, how else do you say that he's doing something to retaliate against her for refusing his sexual advances? Well, because Your Honor, the fact is, is that as alleged, it's that one comment, for example, that one allegation. And I understand of course, that this is a matter of accepting it as true for purposes of pleading sufficiency, but the, the, the allegation has to, I would submit, talk about the, the factors that underlie the ultimate conclusion. And just to say, for example, I, I would, again, respectfully submit that the case law doesn't just allow a person to allege because something happened, this is the reason why we were, I was denied this privilege or because. But she also says more than that. I mean, she says, for example, that, you know, she had, she consistently met and often exceeded her sales goals for almost two decades working for Telemundo and its predecessor. Sometime in early 2018, Mr. Soto reassigned several of her accounts, including one of her largest accounts to other account executives and against the client's wishes. And due to these reassignments, she lost more than $525,000 in business. And then she says, Mr. Soto reassigned his clients in retaliation for Mr. Santana, from, I'm sorry, for Ms. Santana rebuffing his sexual advances. So what, I'm, I'm just a little concerned and confused about what else you thought she needed to allege. Well, I think Your Honor, I, I wouldn't want to lose sight of the fact that part of what Your Honor is describing, I think was incumbent upon the plaintiff to articulate in a response to a motion to dismiss. And I, I think that there is a waiver argument here as well. I mean, we, we do. I mean, yes and no, yes and no, right? I mean, she may have waived her opportunity to respond to the motion to dismiss and it certainly would have been much better practice to respond to the motion to dismiss. But that doesn't mean that the district court can then not apply the normal standard of review on this kind of a motion, right? I mean, it still has to look and see whether viewing the allegations in the complaint in the light most favorable to the plaintiff and drawing all reasonable inferences from those allegations in her favor, she has said enough to state a cause of action. I mean, your, your client is not relieved of that standard by the fact that she hasn't responded. You would agree with that, right? Your Honor, I certainly agree and I want to make sure I understand the court's question. When you say we're not relieved from that. You're not relieved. Your client is, doesn't get a pass or doesn't get a better standard than what the standard is that applies on a motion to dismiss, which is the district court, regardless of whether or not they responded, the district court can't dismiss the complaint. If in fact, when we view the allegations in the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in her favor, she states a cause of action. And I'll say a couple of things simply that regard, number one, I stand on our position that when read in its entirety, these allegations, conclusory as they are, understanding that the plaintiff in some instances made the allegations that your Honor read, does not provide the sufficiency of identifying the necessary components to it. But I understand the court's point, but I want to say this. And I wouldn't say that it puts, it wouldn't say that it puts us under a different standard, but what it does do, noting that the standard is really on the plaintiff to make their case, to present their claim, to comply with court rules, to adhere to the procedures, the waiver standards, the principles of waiver still apply, for example. You can't, I mean, you cannot waive, if the complaint meets the requirements under the rule, you cannot waive the fact that it meets the requirements under the rule. I mean, that's just because you don't respond to the motion to dismiss, doesn't waive that the rule applies and requires certain things, right? And if it satisfies those requirements, then that's that. But your Honor, I understand, but the plaintiff did not ask for leave to amend again, and the plaintiff could have done so. So in terms of... But that's a different issue. I mean, I'm asking, I'm asking you whether you agree that you don't get an easier standard under the governing rule for a motion to dismiss, just because they didn't respond. I mean, they should have responded. There's no question about that. But if the allegations satisfy the requirements under the rule, it doesn't really matter that they didn't respond, right? I mean, you're not disagreeing with that, are you? I cannot disagree. No, I cannot disagree with the notion that if the allegations on their face do state a claim, I agree with the court's observation that it must be evaluated on the allegations. I only highlight those other points because I think it's incumbent upon the plaintiff who is defending their allegations to respond to a motion to dismiss. And when the amended complaint is dismissed, you seek leave to amend, which they did not do. They filed a post-dismissal request for reconsideration, and the court denied it. So I would say this. I start from the premise, I stand on my position. I mean, again, I know the court is going through different allegations, and I know when your Honor asked counsel what were the specific allegations, I heard a lot of references to the general allegations that Mr. Soto and Mr. Roldan were supervisors. Now, if simply coming in and saying in an allegation, and yes, accepting it is true, this person did this because I complained. I mean, if that is sufficient, which I submit it is not, then that's one issue. But I believe, in total, when going through these allegations, they are vague, they are conclusory, they are not detailed sufficiently to state a claim for retaliatory conduct. What did Mr. Soto or Mr. Roldan know with respect to the complaint? When did they learn about this? What actions did they take that were specifically in retaliation for that complaint? Now, I understand that a person can allege, someone did this to me because they were retaliating. But that's just a conclusory, it's almost like a legal conclusion, Your Honor. It's not... Right, and we have other, I mean, we look at other things like the timing, etc. when we make those kinds of determinations. Sure, but the timing here, I mean, the temporal proximity to the extent that's even considered, weighs very far against the finding of retaliation even as alleged. And the court looked at that as well. We have an April letter, and then the alleged conduct didn't occur till three months later, which multiple courts, two and a half months later to be more precise, which multiple courts have explicitly found decisions that we've Well, yes and no. I think there's a different consideration here because she was out of the office during that period of, for two months between when she sent the letter and when she returned. So it seems, you know, to me anyway, it seems like that's not the time frame we evaluate because the first opportunity they would have had to retaliate against her in these ways would have been when she returned to the office. I respectfully disagree with that, Your Honor, because if Your Honor will recall, the original complaint, the initial complaint from the December letter that came from plaintiff was complaining about workplace conduct that occurred while she was at home. So I disagree that claims of retaliation would have only resumed if ever, which we respectfully do not. Not all claims, but certainly some. I mean, for example, her asking whether she could work from home. I mean, that would be something that they couldn't retaliate against her for until such time as she asked if she could work from home, right? I mean, well, of course, Your Honor, but that doesn't mean, quite frankly, that there couldn't have been alleged retaliatory conduct. For example, we've heard general assertions about accounts being those are things that could have happened while she was gone. And so, for example, if they had alleged that the day after receiving this letter, all of her accounts were taken from her and moved to a different person. Now we're talking about a temporal proximity that's consistent with case law and would be an allegation that one could show or would arguably say there's a causal connection. We don't have that here. We don't have that kind of specificity here. We have very general, vague, and conclusory assertions. And again, when you ask counsel, where are the allegations? His general response was, well, we have these individuals who are supervisors. And I just submit respectfully that that's not enough. And I also think, I do think, Your Honor, that it was incumbent upon the plaintiff to respond to the motion and to address it and to articulate these issues before the district judge. That's part of the argument I would make as well. I mean, in terms of supporting their position that the allegations are sufficient to pass muster, that obligation came and went and they abandoned it. I have a question about the hostile work environment. Yes, Your Honor. And that is, it appears the district court cited to a series of unpublished opinions to conclude that behavior such as the grazing of Ms. Santana's leg, I think there was her arm around her waist, some of the comments that she and others were subjected to were just, in the district court's words, ill-conceived sexual innuendos, jokes, and offensive utterances, but didn't rise to the level of a hostile work environment. And I'm just interested in your response as to how that cannot be. And in particular, I'm thinking about a let's say a male employee is touched in his private areas multiple times, or even twice in a six-month period, and then is invited into his boss's office, the person who touched his body in that way, is invited to conduct an annual review, the door is closed, it's been six months, it's only happened twice, but is it your position that that employee should feel comfortable and not subject to any hostility in that situation? Because that's what the district court's reasoning suggests. So I do want to be clear about how I address these issues, because I would start from the premise of saying that I think what the district judge did correctly was parse out the timing of some of the conduct that was set forth through the record. And why that matters, to answer your Honor's question. I would suggest that any type of conduct like that is totally inappropriate. Okay, I don't want there to be any confusion about that. Whether it rises to a Title VII hostile environment workplace situation, I would, I think requires a little more discussion. But I just want to start off by saying what your Honor just described is certainly inappropriate conduct in any place, certainly in a workplace. What the district judge did, and I believe correctly so, was she parsed out the timing and looked at the assertions that were set forth in the deposition of the plaintiff, juxtaposed with the assertions in the affidavit. And what the district judge did was correctly, under the Junkins v. U.S. Industries case, the district judge said, I'm not going to consider the discrepancies that are set forth in the affidavit because there's been no explanation for why the plaintiff has basically contradicted or disavowed or extrapolated upon things from the deposition. So, and plaintiff has not appealed that decision. So to be clear, the district judge said that she was not going to consider conflicting presentations in the affidavit and was only going to focus on the testimony from the deposition and plaintiff has waived that by not appealing that issue. So what the district judge did was, in describing the conduct, the district judge focused on the assertions from the deposition, which were far less severe in their description than the affidavit. And we noted this in our brief. In the initial brief, plaintiff cites the affidavit of the plaintiff 43 times, as opposed to the deposition, which is barely cited at all, only a few times. The district judge did something else that I submit is correct. The district judge didn't consider conduct that predated the employment situation with Telemundo. That's critical because it's all about, not only is it about the conduct, but it's about Telemundo's awareness of the conduct. So what we know here is, is that when we look at the deposition testimony, and I can go through it and provide, of course, the court with specific references. But that's your position as to why the district court didn't consider the post notice incidents? That's our position as to why those post notice incidences were not considered as harassment. They weren't considered, the judge didn't consider those in connection with the, well, let me put it this way. The post incident conduct that I'm thinking of specifically, going to the deposition, were as follows. And this is why I think the judge juxtaposed the conduct from the, described from the deposition from the affidavit. This is from the deposition, okay? Docket entry 80-3 from 182 to 183. Plaintiff identified three times that she could identify of a touching. And again, I'm not condoning, obviously I don't condone anything like this, but the district judge looked at it from this perspective. Question, you contend that Mr. Soto touched you. When did he touch you? Answer, driving down to Miami and in the office. And when was that trip to Miami that you were referencing? I don't know if it was 2016 or 15. And at the time of this trip, were you employed by ZGS? Answer, yes. That's a docket entry 80-3 at 175 to 177. So I guess to, given the time, is your argument is that although the affidavit might've presented very troubling incidents, the deposition itself did not? That is correct, Your Honor. And that is what the district judge correctly did. And the plaintiff hasn't appealed the decision by the district judge to disregard the conflicting presentations in the, or the averments in the affidavit. Because, and we did move below to strike it as a sham. The judge denied that and instead chose under Junkins to only consider those averments that were not conflicting with the testimony from her deposition. And as I mentioned, the only testimony of a post-return touching, plaintiff said, was she believes it to be unintentional. Or she couldn't say if it was or wasn't. That's at her deposition at pages 181, 182. There was an assertion, it said here, when I got back to work in 2019, what happened? Answer, he reached over my chair and rubbed his leg and pulled my skirt up with his leg to grab a pen on my desk. Question, was it intentional that he pulled your skirt up? Answer, I can't say it was or wasn't. Then. I think we have your argument. Yes, Your Honor. Are there any other, if there are no other. It's all right. We've just gone a little bit over, as you know, six, over six minutes over. Thank you, Your Honor. I would ask that the court affirm in its entirety. Thank you. Thank you. All right. Mr. Mann, you have five minutes. We'll give you a little extra time if you need it, since we took Mr. Ryder over by six minutes. Thank you, Your Honor. I appreciate that. So, you know, I said I would try and find the exact answer as best I could to allegations in the amended complaint that stated that Soto and Roldan had the power to reassign accounts or adjust statistics. And they are found at paragraphs 43 through 46. To paraphrase, they say that previously Soto had reassigned accounts. Ms. Santana lost business as a result of that. And that in retaliation, he had refused to adjust her statistics after she came back from leave. The opposing counsel mentioned the Green case, which I wanted to briefly address. I find that the Green v. Alabama case provides a good contrast regarding the notice to the defendant. The facts in Green were essentially a plaintiff who had, I believe, worked for two different Alabama state agencies or departments, filed his complaint, and he generically alleged that the defendant was aware because the prior agency must have told the more recent agency about his complaint, or that it was aware through its own inquiry. He essentially just speculated and said, oh, they're aware. They have told each other or they found out on their own. That's clearly not what we've got here in this case. The plaintiff, you know, reported through counsel, I should say, reported her complaint through her letter in April. We also have allegations, for example, that the investigation kind of leaked out and that Mr. Roldan actually called one of the employees before she was being interviewed to try to give his side of the story, right? Excuse me? I'm not sure I understood the question. That's okay. Go ahead. Okay. Then regarding the temporal issue, I think we already had addressed that. So the information about what was known by whom that opposing counsel was addressing is something that we think basically is not the standard for a motion to dismiss a complaint, and that is the type of information that can be further developed through discovery. We do contend that the district court improperly parsed out conduct after Ms. Santana's complaint and characterized it as strictly retaliation, and at that point, obviously, the district court had already denied, excuse me, dismissed the retaliation claim. We don't see why it could not have been both retaliation and sexual harassment. And I think that's all I've got for the panel today. I thank you for your time. So your position in terms of the hostile work environment is that the allegations, even with the inconsistencies between the affidavit and deposition, were sufficient? So there were additions. As to inconsistencies, I'm not sure that there were many, if any. What they call inconsistencies, when you read the deposition of Ms. Santana, there were a lot of answers that were, you know, that's all I can remember right now. I would have to go check my notes. That answer was given several times, and then when she did, afterwards, she filed the affidavit. She couldn't remember everything that had happened. Apparently, there was so much of it in terms of the inappropriate conduct and comments that as she sat there, and that was a question that was, that was a specific question that was phrased, as you sit here right now today, you know, is that, what can you recall? That's all I can recall. You know, I would have to, I would have to go home and think about it, essentially. So with that, we would respectfully request reversal. Thank you. All right. Thank you, counsel. We'll be in recess until tomorrow.